UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

Case No. 26-32559 MAB

In re:

Chapter 7

Amanda Lee Branville
*fka* Amanda Vanbogart
*fka* Amanda Ganbolgart,

Debtor.

NOTICE OF HEARING AND MOTION FOR RELIEF FROM AUTOMATIC STAY

TO: Amanda Lee Branville *fka* Amanda Vanbogart *fka* Amanda Ganbolgart, Joshua M Gustafson-Branville (Co-Borrower), INCLUDING TRUSTEE AND OTHER INTERESTED PARTIES

1. Carrington Mortgage Services, LLC ("Movant") by its attorneys, moves the court for the relief requested below and gives notice of hearing.

2. The Court will hold a hearing on this motion on Thursday October 22, 2026 at 1:30 p.m., in courtroom 2B, 316 North Robert Street, St. Paul, MN 55101 or as soon thereafter as counsel can be heard.

3. Any response to this motion must be filed and delivered not later than Thursday October 15, 2026, which is seven days before the time set for the hearing (including Saturdays, Sundays, and holidays). UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, FRBP Nos. 5005 and Local Rule 1070-1. This is a core proceeding. The Chapter 7 case was filed on August 6, 2026, and is now pending in this Court.

5. This motion arises under 11 U.S.C. § 362 and Federal Rules of Bankruptcy Procedure 4001, and is filed under Federal Rules of Bankruptcy Procedure 9014 and Local Rules 4001-1 and 9006-1. Movant requests relief with

respect to the real property of debtor and co-borrower, subject to a mortgage to movant.

6. The debtor and co-borrower are the owners of real property located at 19650 Dover Drive, Farmington, MN 55024, Dakota County, legally described as:

Lot 22, Block 2, Parkview Ponds

7. Joshua M Gustafson-Branville and Amanda Van Bogart executed a promissory note dated June 25, 2015 and a mortgage dated June 25, 2015, recorded in the office of the County Recorder July 1, 2015, as Document No. 3076122. The mortgage was subsequently assigned to Movant.

8. The debtor has failed to pay monthly mortgage payments and is contractually due for August 1, 2024 to September 1, 2026 and is in default in the amount of $70,376.24 together with reasonable attorneys fees and costs incurred pursuant to the note and mortgage. As of the hearing date the next payment for October 1, 2026 may also be due. The debtor has failed to make any offer of adequate protection. Accordingly, movant's interest is inadequately protected.

9. The unpaid payoff balance due under the mortgage and note as of September 2, 2026 is $308,099.72. (See Affidavit of Movant, paragraph 7).

10. The debtor scheduled a lien in favor of Internal Revenue Service in the amount of $194,763.00, and a lien in favor of US Bank Home Mortgage in the amount of $62,000.00.

11. The debtor scheduled the value of the property as $525,000.00. The Dakota County current tax-assessed value of the property and the Movant's estimated current market value is $561,800.00. Accordingly, the debtor has no equity in the premises and the property is not necessary to an effective reorganization.

12. The Movant desires to protect its interest in the aforementioned property and requests the court to vacate the stay of actions and allow foreclosure pursuant to Minnesota law.

13. The Movant further seeks relief in order to, at its option, offer, provide and enter into any potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement. The Movant may contact the debtor and co-borrower via telephone or written correspondence to offer such an agreement. Any such agreement shall be non-recourse after discharge unless included in a reaffirmation agreement.

14. By reason of the foregoing, Movant is entitled to have the automatic stay lifted and vacated so it can commence the mortgage foreclosure proceedings pursuant to Minnesota Statutes. The Movant also requests that any order granting its motion be effective immediately, notwithstanding Federal Rules of Bankruptcy Procedure 4001(a)(4). This motion is likely to go by default. Movant remains inadequately protected. Each day that passes results in lost interest, which is prejudicial to Movant; therefore, Movant believes there is no reason for delaying entry of the order.

WHEREFORE, Movant by its undersigned attorney, moves the court for an order that the automatic stay provided by 11 U.S.C. § 362(a) be terminated to permit movant to foreclose its mortgage on the subject property, and for such other and further relief as may be just and equitable.

Dated: September 29, 2026

LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P.

By: /s/Kevin T. Dobie

Kevin T. Dobie, #388322
Attorney for Movant
4500 Park Glen Road, #300
Minneapolis, MN 55416
(952) 925-6888
kevin@minnesotamortgagelaw.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

Case No. 26-32559 MAB

In re:

Chapter 7

Amanda Lee Branville
*fka* Amanda Vanbogart
*fka* Amanda Ganbolgart,

Debtor.

AFFIDAVIT OF Robyn Perez
IN SUPPORT OF MOTION BY Carrington Mortgage Services, LLC
FOR RELIEF FROM THE AUTOMATIC STAY

Robyn Perez, being first duly sworn on oath, deposes and states as follows:

1. I am over the age of eighteen and am authorized to make this affidavit on behalf of Carrington Mortgage Services LLC.

2. I am presently a Bankruptcy Oversight Specialist for Carrington Mortgage Services LLC. In this position, I have access to the business records of Carrington Mortgage Services LLC and my responsibilities include ascertaining and verifying amounts due and payable as to delinquent bankruptcy accounts.

3. The facts stated in this affidavit are based upon information that I obtained by reviewing records maintained in the ordinary course of Carrington Mortgage Services LLC's business, as part of regularly conducted business activity, by or from information transmitted by person(s) with knowledge of the events described therein, at or near the time of the event described.

4. Joshua M Gustafson-Branville and Amanda Van Bogart executed a note dated June 25, 2015, in favor of Carrington Mortgage Services, LLC, a Limited Liability Company in the original principal sum of $314,248.00.

5. Carrington Mortgage Services LLC is the servicer of the loan and holds the note.

6. The note is secured by a mortgage encumbering certain real property commonly known as 19650 Dover Drive, Farmington, MN 55024 and legally described as follows:

LOT 22, BLOCK 2, PARKVIEW PONDS

7. The unpaid payoff balance of this loan as of September 2, 2026 is $308,099.72.

8. The debtor scheduled the value of the property as $525,000.00. The current tax-assessed value of the property and Carrington Mortgage Services LLC's estimated current market value is $561,800.00. An online printout of the county tax page for the property is attached to this affidavit as "Exhibit A".

9. Attached as "Exhibit B" is a true and correct copy of the loan history beginning on the date of default applicable to this motion provided on Local Form 4001-1.

10. The debtor scheduled a lien in favor of Internal Revenue Service in the amount of $194,763.00, and a lien in favor of US Bank Home Mortgage in the amount of $62,000.00.

11. The note, mortgage, amendments, modifications, and assignments, if any, are attached hereto as "Exhibit C" and are true and accurate copies of the originals.

I declare under penalty of perjury that, to the best of my knowledge, and after reasonable inquiry, the foregoing is true and correct.

BY: Robyn Perez
Name: Robyn Perez
Title: Bankruptcy Oversight Specialist
Date: September 29, 2026

Subscribed and sworn to before me
this 29 day of September, 20 26, by
Robyn Perez

Notary Public

State of Texas
My Commission expires: 03/11/2028

ELSA CHAVEZ ARROYO
Notary ID #130578917
My Commission Expires
March 11, 2028

Personally Known ____ OR
Produced Identification X.

Type of Identification Produced:
Texas Driver License.

DAKOTA COUNTY

## 2026 Property Tax Statement

Date Ran: 9/3/2026

**Dakota County Treasurer-Auditor**
1590 Highway 55
Hastings MN 55033
651-438-4576

**DISCLAIMER:**
*Dakota County provides this data only as a service and does not guarantee the accuracy*

**PROPERTY ID:** [redacted]

**TAXPAYER:** JOSHUA M GUSTAFSON-BRANVILLE
AMANDA VAN BOGART
19650 DOVER DR
FARMINGTON MN 55024

**TAX DESCRIPTION:** PARKVIEW PONDS
[redacted]

**VALUES AND CLASSIFICATION**

| | Payable 2025 | Payable 2026 |
|---|---|---|
| Estimated Market Value: | 554,600 | 561,800 |
| Homestead Exclusion: | 0 | 0 |
| Taxable Market Value: | 554,600 | 561,800 |
| New Imp/Expired Excl: | 0 | 0 |
| Property Class: | RESD HSTD | RESD HSTD |

**1.** Use this amount on Form M1PR to see if you're eligible for a property tax refund. File by August 15. ☐ $7,962.00
**If this box is checked, you owe delinquent taxes and are not eligible.**
**2.** Use this amount for the special property tax refund on schedule 1 on Form M1PR. $7,022.00

### Property Tax and Credits

| | Payable 2025 | Payable 2026 |
|---|---|---|
| 3. Property taxes before credits | $7,022.00 | $7,963.40 |
| 4. Credits that reduce property taxes | | |
| A. Agricultural and Rural Credits | $0.00 | $0.00 |
| B. Other Credits | $0.00 | $0.00 |
| 5. Property taxes after credits | $7,022.00 | $7,963.40 |

### Property Tax by Jurisdiction

| | Payable 2025 | Payable 2026 |
|---|---|---|
| 6. County: A. Dakota County Levy | $1,133.06 | $1,214.42 |
| B. Regional Transit Rail | $0.00 | $0.00 |
| 7. City or Town: FARMINGTON | $2,722.60 | $2,980.52 |
| 8. State General Tax: | $0.00 | $0.00 |
| 9. School District: 192 | | |
| A. Voter Approved Levies | $2,053.26 | $2,716.10 |
| B. Other Local Levies | $970.98 | $906.46 |
| 10. Special Taxing Districts | | |
| A. Metropolitan Special Taxing Districts | $49.38 | $53.44 |
| B. Other Special Taxing Districts | $92.72 | $92.46 |
| C. Tax Increment | $0.00 | $0.00 |
| D. Fiscal Disparity | $0.00 | $0.00 |
| 11. Non-school voter approved referenda levies | $0.00 | $0.00 |
| 12. Total property tax before special assessments | $7,022.00 | $7,963.40 |
| 13. Special Assessments | | |
| Principal: | (Total) | $516.60 |
| Interest: | $0.00 | $0.00 |
| **14. Your Total Property Tax and Special Assessments** | **$7,022.00** | **$8,480.00** |

---

**DO NOT USE THIS STATEMENT FOR TAX PAYMENTS**

If the Line 1 box is checked, contact our Property Information Center at 651-438-4576 for delinquent tax amounts

Go Paperless

View the tax stub

EXHIBIT A

LOCAL FORM 4001-1(a)
REVISED 09/25

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re: Case No. 26-32559

**Amanda Lee Branville** Chapter 7
*fka* **Amanda Vanbogart**
*fka* **Amanda Ganbolgart**

Debtor(s).

**LOAN HISTORY**

Begin loan history from the date of the first default related to the current default amount that is claimed in the motion.

| | | | | CHARGES | | | | |
|---|---|---|---|---|---|---|---|---|
| Date payment due | Date payment received | Date to which payment applied (month/year) | Amount Received From the Debtor(s) | Monthly Amount Due: Principal + Interest | Monthly Amount Due: Escrow | Amount Due: Late Fees | Amount Due: Other Charges | Description of Charges |
| 8/1/2024 | | | | $1,455.33 | $1,112.77 | | | |
| 9/1/2024 | | | | $1,455.33 | $1,112.77 | | | |
| 10/1/2024 | | | | $1,455.33 | $1,142.18 | | | |
| 11/1/2024 | | | | $1,455.33 | $1,142.18 | | | |
| 12/1/2024 | | | | $1,455.33 | $1,142.18 | | | |
| 1/1/2025 | | | | $1,455.33 | $1,142.18 | | | |
| 2/1/2025 | | | | $1,455.33 | $1,142.18 | | | |
| 3/1/2025 | | | | $1,455.33 | $1,142.18 | | | |
| 4/1/2025 | | | | $1,455.33 | $1,142.18 | | | |
| 5/1/2025 | | | | $1,455.33 | $1,142.18 | | | |
| 6/1/2025 | | | | $1,455.33 | $1,142.18 | | | |
| 7/1/2025 | | | | $1,455.33 | $1,142.18 | | | |
| 8/1/2025 | | | | $1,455.33 | $1,142.18 | | | |
| 9/1/2025 | | | | $1,455.33 | $1,142.18 | | | |
| 10/1/2025 | | | | $1,455.33 | $1,383.83 | | | |
| 11/1/2025 | | | | $1,455.33 | $1,383.83 | | | |
| 12/1/2025 | | | | $1,455.33 | $1,383.83 | | | |
| 1/1/2026 | | | | $1,455.33 | $1,383.83 | | | |
| 2/1/2026 | | | | $1,455.33 | $1,383.83 | | | |
| 3/1/2026 | | | | $1,455.33 | $1,383.83 | | | |
| 4/1/2026 | | | | $1,455.33 | $1,383.83 | | | |
| 5/1/2026 | | | | $1,455.33 | $1,383.83 | | | |
| 6/1/2026 | | | | $1,455.33 | $1,383.83 | | | |
| 7/1/2026 | | | | $1,455.33 | $1,383.83 | | | |
| 8/1/2026 | | | | $1,455.33 | $1,383.83 | | | |
| 9/1/2026 | | | | $1,455.33 | $1,383.83 | | | |
| **TOTALS:** | | | $0.00 | $37,838.58 | $32,537.66 | $0.00 | $0.00 | |
| | | | (a) | (b) | (c) | (d) | (e) | |

* Any "Other Charge" must be described, itemized by amount and allowed under note and/or mortgage (e.g., inspection fee, appraisal fee, insurance, taxes, etc.)

| | |
|---|---|
| Default amount claimed in the motion. Note: Total amount due (columns (b) + (c) + (d) + (e)) less amount received from the debtor(s) (column (a)) must equal the default amount claimed in the motion. | $70,376.24 |
| Attorneys' fees and filing fee for the motion, if allowed under note and/or mortgage, and sought by movant to resolve motion. | $1,424.00 |
| Escrow balance (amounts held for payment of taxes, insurance, etc.). | |
| Suspense account balance (amount of un-applied payments). | $0.00 |

EXHIBIT B

# NOTE

[redacted]

Multistate

| | | |
|---|---|---|
| June 25, 2015<br>[Date] | Farmington,<br>[City] | Minnesota<br>[State] |

19650 Dover Drive, Farmington, MN 55024
[Property Address]

1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **Carrington Mortgage Services, LLC, a Limited Liability Company**

and its successors and assigns.

2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of **THREE HUNDRED FOURTEEN THOUSAND TWO HUNDRED FORTY EIGHT AND NO/100* * * * * * * * * * * * * * * * * * * * * * * * *** Dollars (U.S. **$314,248.00** ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **THREE AND THREE-FOURTHS** percent ( **3.750 %** ) per year until the full amount of principal has been paid.

3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

4. MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the **1st** day of each month beginning on **August 1, 2015.** Any principal and interest remaining on the **1st** day of **July, 2045** will be due on that date, which is called the "Maturity Date."

(B) Place

Payment shall be made at **P.O. Box 79001**
**Phoenix, AZ 85061-9001**

or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. **$1,455.33.** This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.

[Check applicable box] ☐ Graduated Payment Allonge ☐ Growing Equity Allonge
☐ Other [specify]

5. BORROWER'S RIGHT TO PREPAY

**Borrower has the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When Borrower makes a Prepayment, Borrower will tell the Lender in writing that Borrower is doing so. Borrower may not designate a payment as a Prepayment if Borrower has not made all the monthly payments due under the Note.**

**Borrower may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Lender will use the Prepayments to reduce the amount of Principal that Borrower owes under this Note. However, the Lender may apply the Prepayment to any accrued and unpaid interest on the Prepayment amount before applying the Prepayment to reduce the Principal amount of the Note. If Borrower makes a partial Prepayment, there will be no changes in the due date or in the amount of the monthly payment unless the Lender agrees in writing to those changes.**

6. BORROWER'S FAILURE TO PAY

(A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of **15** calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR** percent ( **4.000 %** ) of the overdue amount of each payment.

(B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and



[redacted]

EXHIBIT C

 [redacted]

all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_________________________ **(Seal)**
**JOSHUA M GUSTAFSON-BRANVILLE**

_________________________ **(Seal)**
**AMANDA VAN BOGART**

**Lender: Carrington Mortgage Services, LLC**
**NMLS ID:** [redacted]
**Broker: Satori Mortgage**
**NMLS ID:** [redacted]
**Loan Originator: Steven Allan Conklin**
**NMLS ID:** [redacted]

**PAY TO THE ORDER OF:**
**WITHOUT RECOURSE**
**Carrington Mortgage Services, LLC , a Limited Liability Company**

**BY:** _________________________

.



[redacted]

CARRINGTON
MORTGAGE SERVICES

# ALLONGE TO NOTE

**LOAN NUMBER:** [redacted]

**BORROWER(S):**
Joshua M Gustafson-Branville

**PROPERTY ADDRESS:**
19650 Dover Drive
Farmington, MN 55024

**NOTE DATE:** 06/25/2015

**NOTE AMOUNT:** $ 314,248.00

**PAY TO THE ORDER OF:**

WITHOUT RECOURSE CARRINGTON MORTGAGE SERVICES, LLC, A DELAWARE LIMITED LIABILITY COMPANY

**BY:** ______________________

**NAME:** Yolanda Talbot

**TITLE:** Vice President, Post Closing

[redacted]

# ALLONGE TO NOTE

This allonge makes reference to the following note:

| | |
|---|---|
| Borrower: | **JOSHUA GUSTAFSON-BRANVILLE**<br>**AMANDA Van BOGART** |
| Loan #: | [redacted] |
| Loan Amount: | **$314248.00** |
| Note Date: | **6/25/2015** |
| Property Address: | **19650 DOVER DRIVE, FARMINGTON, MN 55024** |

Pay to the Order of:

Without Recourse By:

**Komarith Touk- Manager, Collateral Trade**
**Carrington Mortgage Services, LLC**

Receipt: [redacted] 3076122
MTG $46.00
CONV $5.00
MRT $722.77

[redacted]

Return to:
ERECORDING PARTNERS NETWORK
400 SECOND AVENUE SOUTH

MINNEAPOLIS MN 55401

Recorded on: 7/1/2015 2:46 PM
By: CGK, Deputy

Office of the County Recorder
Dakota County, Minnesota
*Joel T. Beckman, County Recorder*
*Joel T. Beckman, Treasurer Auditor*

**When recorded, return to:**
**~~CARRINGTON MORTGAGE SERVICES, LLC~~**
**~~Attn: Records Management~~**
**1600 South ~~Douglass Road~~, #400**
**Suites ~~110 &~~ 200-A**
**~~Anaheim~~ , CA 92806**

**Return to: LendServ National Title**
1970 Oakcrest Ave Suite #118
Roseville MN 55113

[redacted]

[redacted] **ve This Line For Recording Data]**

**State of Minnesota** [redacted] **MORTGAGE**

FHA Case No.
[redacted]

THIS MORTGAGE ("Security Instrument") is given on **June 25, 2015.** The Mortgagor is **JOSHUA M GUSTAFSON-BRANVILLE*** **AND AMANDA VAN BOGART*, JOINT TENANTS**
* A single person *A single person

("Borrower").

**"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of PO Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **Carrington Mortgage Services, LLC, a Limited Liability Company**

("Lender") is organized and existing under the laws of **Delaware,** and has an address of **1600 South Douglass Road, Suites 110 & 200-A , Attn: Lending Division, Anaheim, CA 92806.**

Borrower owes Lender the principal sum of **THREE HUNDRED FOURTEEN THOUSAND TWO HUNDRED FORTY EIGHT AND NO/100*** * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * Dollars (U.S. **$314,248.00** ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **July 1, 2045,** and for interest at the yearly rate of **3.750 %** percent. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and

**Initials:** JMGB AVB



[redacted]

Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in **Dakota** County, Minnesota:

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".**

[redacted]

which has the address of **19650 Dover Drive, Farmington,** [Street, City],

Minnesota **55024** [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 **et seq.** and implementing regulations, 24 CFR Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

**Initials:** JmGB AYB



[redacted]

[redacted]

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

Initials: JMGB AVB


[redacted]

[redacted]

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent) and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**Initials:** JM GB AVB


[redacted]

 [redacted]

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmentalor regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full of all sums under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees.**

**If Lender invokes the power of sale, Lender shall cause a copy of a notice of sale to be served upon any person in possession of the Property. Lender shall publish a notice of sale, and the Property shall be sold at public auction in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

**21. Interest on Advances.** The interest rate on advances made by Lender under paragraph 7 shall not exceed the maximum rate allowed by applicable law.

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider ☐ Growing Equity Rider ☐ Planned Unit Development Rider
☐ Graduated Payment Rider ☐ Other [specify]

Initials: JMGB AYB



[redacted]

 [redacted]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

6-25-15 (Seal)
JOSHUA M GUSTAFSON-BRANVILLE DATE

6-25-15 (Seal)
AMANDA VAN BOGART DATE

**State of: MINNESOTA**
**County of: DAKOTA**

**This instrument was acknowledged before me on** June 25th, 2015 **by JOSHUA M GUSTAFSON-BRANVILLE AND AMANDA VAN BOGART.** A single person and A single person.

**My commission expires:** 01/31/2018

**Signature of Notarial Officer**

KYRA MACHOVSKY
Notary Public
Minnesota
My Comm. Expires
Jan 31, 2018

Notary Public
**(Title or Rank)**

**Lender: Carrington Mortgage Services, LLC**
**NMLS ID:** [redacted]
**Broker: Satori Mortgage**
**NMLS ID:** [redacted]
**Loan Originator: Steven Allan Conklin**
**NMLS ID:** [redacted]

**THIS INSTRUMENT WAS DRAFTED BY:**
**CARRINGTON MORTGAGE SERVICES, LLC**
**1600 SOUTH DOUGLASS ROAD, SUITES 110 & 200-A**
**ANAHEIM, CA 92806**

**TAX STATEMENTS FOR THE REAL PROPERTY DESCRIBED IN THIS INSTRUMENT SHOULD BE SENT TO:**
**CARRINGTON MORTGAGE SERVICES, LLC**
**1600 SOUTH DOUGLASS ROAD, SUITES 110 & 200-A , ATTN: LENDING DIVISION**
**ANAHEIM, CA 92806**



[redacted]

**Exhibit "A"**

THE FOLLOWING DESCRIBED REAL ESTATE, SITUATED IN THE COUNTY OF DAKOTA AND STATE OF MINNESOTA, TO-WIT:

LOT 22, BLOCK 2, PARKVIEW PONDS

ABSTRACT PROPERTY

**Parcel #:** [redacted]

Receipt:# [redacted]

ASSI $46.00

Return to:
ERECORDING PARTNERS NETWORK
400 SECOND AVENUE SOUTH

MINNEAPOLIS MN 55401

Document Number
**3690540**

[redacted]

**Recorded on: 9/8/2025 10:09 AM**

By: EGU, Deputy

**Office of the County Recorder**
**Dakota County, Minnesota**
*Amy A. Koethe, County Recorder*

**ASSIGNMENT OF MORTGAGE** [redacted]

MERS Telephone No. 1-888-679-6377
P.O. Box 2026, Flint, MI 48501-2026

FOR VALUABLE CONSIDERATION, Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for Carrington Mortgage Services, LLC, its successos and assigns, Assignor, hereby assigns and transfers to

Carrington Mortgage Services, LLC, Assignee, 1600 South Douglass Road, Suite 200-A, Anaheim, CA 92806,

the Assignor's interest in the Mortgage dated June 25, 2015, executed by Joshua M Gustafson-Branville, a single person, and Amanda Van Bogart, a single person, as joint tenants, as mortgagor(s) to Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for Carrington Mortgage Services, LLC, its successos and assigns its successors and assigns as mortgagee, filed for record in the office of the Dakota County Recorder July 1, 2015, Document No. 3076122.

Assignor covenants with Assignee, its successors and assigns, that Assignor has good right to assign and transfer the same.

Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for Carrington Mortgage Services, LLC, its successos and assigns

By:____________________
Its:____________________ Veronica Robles
Date AUG 29 2025 Assistant Secretary

STATE OF __________ )
COUNTY OF __________ )

The foregoing instrument was acknowledged before me this______day of ____________, 20___, by ________________ the ____________________ of Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for Carrington Mortgage Services, LLC, its successos and assigns, on behalf of the corporation.

See Attached

__________________________
(SIGNATURE OF PERSON TAKING ACKNOWLEDGMENT)

THIS INSTRUMENT WAS DRAFTED BY:
LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P.
4500 Park Glen Road #300
Minneapolis, MN 55416
(952) 925-6888
[redacted]

CALIFORNIA ALL-PURPOSE ACKNOWLEDGEMENT

A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California }
County of Orange }

On August 29th 2025 before me, Rebecca Payetta, Notary Public, personally appeared, **Veronica Robles,** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, exe-cuted the instrument.

I certify under PENALTY OF PERJURY under the laws of State of California that the foregoing paragraph is true and correct.

REBECCA PAYETTA
Notary Public - California
Orange County
Commission # [redacted]
My Comm. Expires Oct 27, 2028

WITNESS my hand and official seal.

SIGNATURE______________________
REBECCA PAYETTA

PLACE NOTARY SEAL ABOVE

**Optional**

Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.

**Description of attached document**

Title or type of document: ______________________

______________________

______________________

Document Date:______________________Number of Pages:______________

Signer(s) Other than Named Above:______________________

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

Case No. 26-32559 MAB

In re:

Chapter 7

Amanda Lee Branville
*fka* Amanda Vanbogart
*fka* Amanda Ganbolgart,

Debtor.

MEMORANDUM OF LAW

Carrington Mortgage Services, LLC ("Movant") submits this memorandum of law in support of its motion for relief from the stay in the above-entitled matter.

**FACTS**

Movant holds a valid, perfected mortgage on real property owned by the debtor and co-borrower. On the date of filing, the debtor was delinquent under the note and mortgage, and the arrearages as of September 2, 2026 total $70,376.24.

**ARGUMENT**

Pursuant to 11 U.S.C. § 362(g)(1), "In any hearing under subsection (d) . . . of this section concerning relief from the stay . . . the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and . . . the party opposing such relief has the burden of proof on all other issues."

**I. Movant Is Entitled to Relief From Stay Under Section 362(d)(1) for Cause.**

Under § 362(d)(1) of the Bankruptcy Code, relief from the automatic stay shall be granted upon request of a creditor "for cause, including the lack of adequate protection of an interest in property of such creditor." 11 U.S.C. § 362(d)(1). As the Eighth Circuit Bankruptcy Appellate Panel stated in *In re Martens*,

> The statutory grounds [under 11 U.S.C. §§ 362(d)(1) and (2)] for granting relief from the automatic stay are in the disjunctive. The bankruptcy court must, therefore, grant relief if the movant either proves cause, or proves that there is no equity in the property and that it is not necessary for a successful reorganization. Cause has been defined to mean "any reason whereby a creditor

> is receiving less than his bargain from a debtor and is without remedy because of the bankruptcy proceeding."

*In re Martens*, 331 B.R. 395, 398 (8th Cir. B.A.P. 2005)(citations omitted). Section 362(d)(1) permits relief from stay for "cause." "Because there is no clear definition of what constitutes 'cause,' discretionary relief from the stay must be determined on a case by case basis." *In re Mac Donald*, 755 F.2d 715, 717 (9th Cir. 1985)(citing 2 Collier Bankruptcy Manual § 362.06 (3d ed. 1979)).

The standard for "cause" under § 362(d)(1) is broad, and may extend beyond one enumerated ground of lack of "adequate protection" as defined by 11 U.S.C. § 361. *In re Lilyerd*, 49 B.R. 109, 116 (Bankr. D. Minn. 1985). Most often, cause is shown by a debtor's failure to afford adequate protection of a secured creditor's interest in its security. *Id.* Where the creditor has established a prima facie cause under Section 362(d)(1), the debtor has the burden of establishing that the creditor's interest is or will be adequately protected. *Id.* "The debtor must affirmatively propose the method by which it will afford adequate protection and the Court must then determine the adequacy of the debtor's proposal." *Id.*

The debtor in this case has failed to make payments required by the note and mortgage and is contractually due for the months of August 1, 2024 to present. The debtor has not otherwise provided Movant with adequate protection of its interest in the property. Such circumstances constitute cause, within the meaning of § 362(d)(1), justifying relief from the stay.

**II. Movant Is Entitled to Relief From Stay Under Section 362(d)(2) Because There Is No Equity and the Property Is Not Necessary for an Effective Reorganization.**

Pursuant to § 362(d)(2) of the Bankruptcy Code, relief from the stay is appropriate where a debtor has no equity and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). Under Section 362(d)(2), the creditor

initially bears the burden of showing that the debtor has no equity in the property. *In re Bowman*, 253 B.R. 233, 238 (B.A.P. 8th Cir. 2000)(citing 11 U.S.C. § 362(g)).

"The test for determining equity under the first part of § 362(d)(2) involves a comparison between the total liens against the property and the property's current value." *Bowman*, 253 B.R. at 238 (citing *Nantucket Investors II v. California Federal Bank (In re Indian Palms Assocs., Ltd.),* 61 F.3d 197, 206 (3d Cir. 1995)). All encumbrances are totaled to determine equity, and it does not matter whether or not all lienholders have requested relief from the stay. *Id.* A court should also deduct the "costs of sale and expenses . . . to preserve the property" to determine whether the debtor has any equity. *In re Hammers*, No. 18-80602-TRC, 2018 WL 4026993, at *4 (Bankr. E.D. Okla. Aug. 21, 2018)(citing *In re Stratford Hotel Co.,* 119 B.R. 695 (Bankr. E.D. Mo. 1995)); *In re Lockwood*, No. 09-33026 SBB, 2010 WL 1790434, at *7, n.4 (Bankr. D. Colo. Apr. 16, 2010)("further reduction in value is also appropriate to reflect transactions costs"); *In re Steffens*, 275 B.R. 570, 578 (Bankr. D. Colo. 2002) (approved 5% reduction for cost of sale in context of relief from stay); *In re Dickinson,* 185 B.R. 76, 77 (Bankr. D. Colo. 1995) (approving 10% reduction).

By definition, in a Chapter 7 liquidating bankruptcy case, the property is not necessary for an effective reorganization. *In re Martens*, 331 B.R. 395, 398 (B.A.P. 8th Cir. 2005).

In this case the unpaid payoff balance due to Movant is $308,099.72. The debtor scheduled the value of the property as $525,000.00. The debtor scheduled a lien in favor of Internal Revenue Service in the amount of $194,763.00, and a lien in favor of US Bank Home Mortgage in the amount of $62,000.00. The current tax-assessed value of the property and the Movant's estimated current market value is $561,800.00. Thus, the debtor has no equity in the property, and as this is a Chapter 7 case, the property is not necessary to an effective reorganization.

**CONCLUSION**

Movant is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) for cause because the debtor has not made the payments required under the note and mortgage and the debtor has not offered any adequate protection. Movant is also entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2) because the debtor has no equity and the property is not necessary to an effective reorganization.

Movant respectfully requests an order modifying the automatic stay consistent with the attached proposed Order.

Dated: September 29, 2026

LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P.

By: /s/Kevin T. Dobie

Kevin T. Dobie, #388322
Attorney for Movant
4500 Park Glen Road, #300
Minneapolis, MN 55416
(952) 925-6888
kevin@minnesotamortgagelaw.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

Case No. 26-32559 MAB

In re:

Chapter 7

Amanda Lee Branville
*fka* Amanda Vanbogart
*fka* Amanda Ganbolgart,

Debtor.

UNSWORN DECLARATION FOR PROOF OF SERVICE

I, Samantha M. Roering, employed on this date by LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P., attorneys licensed to practice law in this court, with office address of Suite 300, 4500 Park Glen Road, Minneapolis, Minnesota 55416, declares that on September 29, 2026, I served the annexed Notice of Hearing and Motion for Relief from Automatic Stay upon each of the entities named below by mailing to them a copy thereof by enclosing same in an envelope with first class mail postage prepaid and depositing same in the post office at Minneapolis, Minnesota, addressed to each of them as follows:

Amanda Lee Branville
19650 Dover Drive
Farmington, MN 55024

Joshua M Gustafson-Branville
19650 Dover Drive
Farmington, MN 55024

**CERTIFIED MAIL**
U.S. Bank National Association
Attn: Gunjan Kedia, CEO
800 Nicollet Mall
Minneapolis, MN 55402

**CERTIFIED MAIL**
United States Attorney
Attn: Civil Process Clerk
300 S. 4th Street, Suite 600
Minneapolis, MN 55415

**CERTIFIED MAIL**
U.S. Department of Justice
Attn: United States Attorney General
950 Pennsylvania Avenue NW
Washington, DC 20530-0001

**CERTIFIED MAIL**
Internal Revenue Service
Attn: IRS Commissioner
1111 Constitution Avenue NW
Washington, DC 20224

and delivered by email notification under CM/ECF on the day efiled with the court to each of them as follows:

Office of the United States Trustee

Mary Jo A Jensen-Carter, Chapter 7 Trustee

Andrew C. Walker, Esq.

/s/Samantha M. Roering
Samantha M. Roering

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

Case No. 26-32559 MAB

In re:

Chapter 7

Amanda Lee Branville
*fka* Amanda Vanbogart
*fka* Amanda Ganbolgart,

Debtor.

ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY

This case is before the court on the motion of Carrington Mortgage Services, LLC, for relief from the automatic stay imposed by 11 U.S.C. § 362(a).

Based on the record, the court finds that grounds exist under 11 U.S.C. § 362(d) to warrant relief.

**IT IS ORDERED**:

1. The motion for relief from the automatic stay is granted as follows.

2. The automatic stay imposed by 11 U.S.C. § 362(a) is terminated such that the movant may exercise its rights and remedies under applicable non-bankruptcy law with respect to the following property:

   Lot 22, Block 2, Parkview Ponds
   Dakota County

3. Notwithstanding Fed. R. Bankr. P. 4001(a)(4), this order is effective immediately.

Dated: ___________

________________________________
United States Bankruptcy Judge